UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                    Case No.: 16-12372-7

RICHARD A. HAZELTON
and KELLY J. HAZELTON,

      Debtors.

---

## DECISION

On July 8, 2016, Debtor Kelly Hazelton ("Debtor") and her husband filed a joint chapter 7 petition. On October 19, 2016, they received a discharge. On September 26, 2017, Debtor filed a motion for sanctions against the University of Wisconsin-Stout ("Stout") for a violation of the discharge. On October 3, 2017, Stout filed an objection to the motion. The facts are undisputed. The parties filed briefs and the Court took the matter under advisement.

## FACTS

Debtor enrolled at Stout in 2008. Debtor signed a Payment Plan Agreement with Stout on June 27, 2008 (the "Plan"). The Plan permitted Debtor to register for classes but defer full payment of her tuition according to a schedule defined in the Plan. Specifically, the Plan called for full payment of tuition for the summer term by the end of the first week of summer classes. The Plan did not contain an expiration date.

In 2011, Debtor withdrew from Stout, but she re-enrolled three years later in 2014. Debtor enrolled in classes for the summer term of 2015, but she did not immediately pay her tuition for that term and apparently planned to

rely on the deferred payment schedule in the Plan. Debtor failed to make the tuition payment. Without paying for the classes, Debtor earned seven credits during the 2015 summer term and qualified for a degree. Stout refused to issue the degree, insisting Debtor first pay her tuition. Upon a request from Stout, the Wisconsin Department of Revenue intercepted Debtor's 2016 tax return and forwarded it toward payment of the tuition. Once the tuition was paid through the tax return intercept, Stout issued the degree.

Debtor alleges the unpaid tuition, which accrued in 2015, should have been discharged when her chapter 7 was completed in 2016. Stout replies the tuition was not eligible for discharge because it should be characterized as a student loan under 11 U.S.C. § 523(a)(8), IRC § 221(d)(2), and 20 U.S.C. § 1087ll.

## DISCUSSION

As a general rule, student loans are nondischargeable absent a showing of an undue hardship. 11 U.S.C. § 523(a)(8) provides in relevant part:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—

    (8) . . . for—

        (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a government unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

        (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or

        (B) Any other educational loan that is a qualified education loan, as defined in section 221(d)(1)

2

of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

The parties agree Debtor owed an obligation to Stout for unpaid tuition, but they disagree on whether that obligation should be characterized as a simple debt or an educational loan. The crux of the argument rests on the definition of "loan" as outlined in the Internal Revenue Code. Section 221(d)(1) of the Internal Revenue Code states a "qualified education loan" is "any indebtedness incurred by the [debtor] *solely to pay* qualified higher education expenses—

> . . .
>
> (c)   which are attributable to education furnished during a period during which the recipient was an eligible student."

Debtor argues the IRC's definition of a qualified education loan does not apply because the tuition was never "paid." She insists the transaction would only be a "loan" if she had received money and then forwarded it on to Stout. In other words, this transaction would qualify under IRC only if money exchanged hands and expenses were actually paid. She notes the expenses were reflected on a balance sheet, but cash never exchanged hands and therefore the tuition was never paid. In support of her argument, she harkens to *Black's Law Dictionary*, which defines "Pay" as:

> 1.   To give money for a good or service that one buys; to make satisfaction . . .
>
> 2.   To transfer money that one owes to a person, company, etc.
>
> 3.   To give money for the job that he or she does; to compensate a person for his or her occupation.

3

*Black's Law Dictionary* 1309 (10th ed.).

Stout does not reply directly to Debtor's theory. Instead, it notes the general rule that if a person performs a service at another's request, the law will imply the requesting person has made a promise to pay for the reasonable value of the service. *Wheeler v. Hall*, 41 Wis. 447, 449 (1877). Stout also correctly notes Congress changed section 523 through BAPCPA and, as a result, the Code no longer limits the scope of nondischargeable student debt to overpayments or explicit loans.

There is no dispute Debtor owed an obligation to Stout for education expenses that went unpaid. It is also undisputed the obligation was for an educational benefit. Stout is a state university and thus is a governmental unit. The question is whether the Plan constituted a loan as contemplated in the Internal Revenue Code or if it is simply a dischargeable debt. Debtor argues this transaction is unlike a traditional commercial loan because money never exchanged hands. Rather, the parties agreed Debtor would pay her tuition at a later date.

Dictionary definitions of the term "loan" provide helpful guidance. *Black's Law Dictionary* defines a "loan" as "[a]nything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with or without compensation for its use." *Black's Law Dictionary* 936 (6th ed. 1990). *Webster's Third International Dictionary* defines a loan similarly, as "[s]omething lent for the borrower's temporary use on condition that it or its

equivalent be returned." *Webster's Third New International Dictionary* 1326 (Philip Babcock Gove ed., 1993).

While the definitions may imply that money is the subject of the loan, they do not require an actual exchange of funds between the lender and borrower. Notably, *Black's Law Dictionary* also defines a "loan" as "[t]he creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor . . . ." *Black's Law Dictionary* 936 (6th ed. 1990). The definitions do not require an exchange of funds at all. *See id.* ("'Loan' includes . . . [t]he creation of debt by *a credit to an account with the lender* upon which the debtor is entitled to draw immediately . . . .") (emphasis added); *see also West's Legal Thesaurus/Dictionary* 464 (William P. Statsky ed., 1986) (including among its definitions of loan an "advance, credit, accommodation [or] allowance . . . .").

The court in *Gakinya v. Columbia College (In re Gakinya)* addressed a similar set of facts. 364 B.R. 366, 371 (Bankr. W.D. Mo. 2007). There, the debtor signed a deferred payment plan with his university. The debtor signed a contract and promissory note. Over the course of the transaction, no money exchanged hands between the debtor and the university. The debtor filed for bankruptcy and argued the debt to the university was dischargeable because it was not a "loan" under section 523. The court denied debtor's claim and held the transaction was a loan. Specifically, it reasoned the common law definition of loan is "(1) a contract, whereby (2) one party transfers a defined quantity of money, goods, or services, to another, and (3) the other party agrees to pay for

5

the sum or items transferred at a later date." *Id.* at 372. The court went on to reason that a loan does not require a formal transfer of money, especially where the presence of a promissory note evidenced the parties' intention for the transaction to be a loan.

In yet another case dealing with facts similar to those at issue here, the court outright dismissed the notion that a formal exchange of money is required to constitute a loan. *Johnson v. Missouri Baptist College (In re Johnson),* 218 B.R. 449, 457 (B.A.P. 8th Cir. 1998). In that case, a debtor executed a promissory note in favor of his college and then defaulted on that note. Debtor then sought to have that debt discharged in his chapter 13. That debtor articulated a similar theory of dischargeability as the debtor here. The court ruled the debtor's insistence that a "loan" requires that money have formally exchanged hands "overlooks the realities of most commercial transactions in which money, in its most concrete manifestation, never actually changes hands. Under the debtor's definition, only the most mechanical transactions will constitute a loan." *Id.* at 457.

Applying that reasoning to the facts of this case leads to the conclusion the Plan constituted a loan. The Plan meets all the requirements for a "loan" outlined in *Gakinya*: it was a contract in which Stout agreed to provide a service and Debtor agreed to pay her tuition by the end of the first week of summer classes. Looking to the plain definition of "loan" in the IRC also suggests this transaction was an education loan. Debtor incurred the obligation to Stout *solely* to pay for tuition. The indebtedness therefore "made

6

satisfaction" of the tuition expenses. *Black's Law Dictionary* 1309 (10th ed.) (definition of "Pay").

Moreover, from a plain reading of the Plan, it is clear the parties intended for this transaction to be a loan. The Plan itself refers to the transaction as an extension of credit. *See Plan* ("*Credit will not be extended* under this agreement unless the Marital Property Act section is completed for all married students.") (emphasis added). Moreover, the Plan contains a default provision that obligated Debtor to pay 18% yearly interest in the event she failed to make the scheduled payments.

The mere fact that money never *exchanged* hands does not by itself overcome the parties' clear intentions. As the *Johnson* court correctly observed, money in its concrete form rarely exchanges hands in commercial transactions. *Johnson*, 218 B.R. at 457. Indeed, that principle is truer today than it was in 1998 when *Johnson* was decided. Debtor's insistence that a "loan" must include some concrete exchange of money ignores the reality of commercial transactions.

In addition, a wide application of Debtor's strict definition of "loan" would unnecessarily increase transaction costs to the detriment of the very students who benefit most from deferred payment plans. If the Court required money to exchange hands for the transaction to qualify as a "loan" in these circumstances, then any university that permits students to defer tuition payments would be required to formally extend money to the student, then wait for the student to transfer the money directly back to the university's

7

account. The extra steps are unnecessary and ultimately antithetical to a payment deferment program. Such a transfer would be a pointless hassle that would multiply transaction costs for the university and, in turn, increase tuition costs for already overburdened students. There is no reason to require a university and student to engage in a formal exchange and re-exchange of funds in these circumstances. It is clear on the basis of the Plan that the parties intended for this transaction to be a credit extension toward education expenses. In other words, the Plan was clearly a loan.

The Court finds the unpaid tuition constituted a loan. Although money never changed hands between Debtor and Stout, the transaction was clearly understood to be a type of student loan. Stout extended credit to the account of the Debtor. The lack of a formal exchange of money does not entitle Debtor to avoid her student loan obligation.

## CONCLUSION

The Court denies the motion for sanctions. The tuition debt was not dischargeable in the chapter 7.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated:  February 23, 2018

                    BY THE COURT:

                    _____
                    Hon. Catherine J. Furay
                    U.S. Bankruptcy Judge