UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:                                                    Case Number: 16-12372-7

RICHARD A. HAZELTON
and KELLY J. HAZELTON,

Debtors.

## Procedural History

Kelly Hazelton ("Debtor") and her husband (collectively, "Debtors") filed a

joint Chapter 7 petition in July 2016. In October 2016 they received a

discharge under 11 U.S.C. § 727. Debtors moved to reopen the bankruptcy

case in August 2017. The Court granted the motion to reopen. Debtors then

moved for contempt sanctions against the University of Wisconsin-Stout ("UW-

Stout").

Debtors alleged UW-Stout's seizure of Debtors' tax refund violated the

discharge injunction.[1] UW-Stout opposed the motion for sanctions contending

that the debt at issue had not been discharged and the refund seizure was

proper. Neither party wanted an evidentiary hearing.[2] The parties agreed that

---

[1] Debtors' Mot. for Sanctions, ECF No. 31.

[2] One is not required. *See Roth v. Nationstar Mortg., LLC (In re Roth)*, 935 F.3d 1270, 1278 (11th Cir. 2019) ("In civil contempt proceedings, 'when there are no disputed factual matters that require an evidentiary hearing, the court might properly dispense with the hearing prior to finding the defendant in contempt and sanctioning him.'") (internal citations omitted).

all needed facts were in the record. The Court took the matter under advisement.[3]

This Court determined the unpaid tuition was not discharged because it qualified as a "loan" under section 523(a)(8).[4] Since it was found that the discharge injunction had not been violated, sanctions were not appropriate. Debtors appealed.

On appeal, the District Court found that the unpaid tuition did not qualify as a "loan" under section 523(a)(8). The Court concluded that UW-Stout violated the discharge injunction. The District Court reversed this Court's decision and remanded for further findings on sanctions.[5] UW-Stout appealed.

The Seventh Circuit determined it did not have jurisdiction because the District Court "decided a subsidiary legal issue and remanded to the Bankruptcy Court for resolution of the sanctions dispute."[6] The Circuit Court points out "whether sanctions are warranted for violation of the discharge injunction, and if so, in what amount" must still be determined by the Bankruptcy Court.[7]

---

[3] *In re Hazelton*, 582 B.R. 223, 224 (Bankr. W.D. Wis. 2018), *rev'd sub nom. Hazelton v. UW-Stout*, No. 18-cv-159, 2019 WL 413567 (W.D. Wis. Feb. 1, 2019).

[4] *In re Hazelton* at 227.

[5] *Hazelton v. UW-Stout*, 2019 WL 413567, at *3.

[6] *Hazelton v. Bd. of Regents*, 952 F.3d 914, 916 (7th Cir. 2020).

[7] *Id.* at 918.

This Court must now determine what, if any, sanctions are warranted, and, if so, in what amount.

## BACKGROUND

Kelly Hazelton enrolled at UW-Stout in 2008. She signed a payment agreement ("Payment Agreement") upon enrollment. The Payment Agreement allowed tuition to be paid on a payment schedule and did not have an expiration date. The Payment Agreement called for full payment of summer term tuition by the end of the first week of the summer term. She withdrew from Stout in 2011. She re-enrolled in 2014 and registered for classes for the summer 2015 term.[8] Debtor did not make tuition payments, but her course load was seven credits. Those credits were enough to meet the requirements for a degree. She had an outstanding tuition balance due when she completed the credit requirement for a degree. As a result, UW-Stout withheld her degree.

Debtors filed a joint Chapter 7 petition in July 2016. They scheduled the debt to UW-Stout as "student loans."[9] Debtor made no attempt during the bankruptcy to have UW-Stout release her degree. Debtors received a discharge three months later. UW-Stout received notice of the discharge.[10]

---

[8] In evaluating whether the Payment Agreement qualified as a "prior or contemporaneous agreement to pay tuition at a later date in exchange for an extension of credit," the District Court, for its opinion, assumed the Payment Agreement was still in effect when Debtor re-enrolled.

[9] ECF. No. 13, Sch. E/F. The Schedule said, "Last Active 05/16."

[10] Certificate of Mailing, ECF No. 23.

At the request of UW-Stout, the Wisconsin Department of Revenue forwarded Debtors' 2016 tax refund in the amount of $1,635.71 to UW-Stout in satisfaction of the Debtor's outstanding tuition balance. Stout issued Debtor's degree some time after.[11]

A. CORRESPONDENCE BETWEEN DEBTORS AND UW-STOUT[12]

In a letter dated March 9, 2017, Debtors' attorney reminded UW-Stout about the discharge injunction and notices sent to the University on October 20, 2016.[13] Debtors demanded return of the tax refund, sanctions, and actual attorneys' fees.[14] Debtors' motion contends that, on March 10, their attorney discussed the matter with UW-Stout's attorney who characterized the debt as a student loan.[15]

In a letter dated April 25, 2017, Debtors' attorney references an apparent conversation between Debtors' attorney and UW-Stout, the substance and date

---

[11] The record does not reflect exactly when this occurred. But in Debtors' original motion for sanctions filed September 26, 2017, Debtors represent that the degree had not yet been delivered. ECF No. 31, ¶ 21. At no point during the bankruptcy did Debtor seek to establish the debt as an undue hardship and no allegation of a violation of the discharge order was made before March 2017. On remand, however, the request for issuance of the degree was eliminated leading the Court to conclude that at some point the degree was issued to Debtor.

[12] This decision details the correspondence because part of Debtors' argument is that through these communications UW-Stout had notice that their position on the characterization of the debt was "objectively unreasonable."

[13] ECF No. 31, Exh. C.

[14] *Id.* The requested amounts were redacted in the letter submitted to the Court. Debtor's degree was not mentioned in this letter.

[15] *Id.,* ¶ 18.

of which is not clear from the record. In that letter, Debtors' attorney insisted

that *Chambers v. Manning*[16] and the Payment Agreement support Debtors'

position—that the debt was discharged through bankruptcy.[17] Debtors

requested return of the tax refund, sanctions, attorneys' fees, and delivery of

Debtor's degree.[18] UW-Stout was given until May 8 to comply.[19] Debtors'

motion represents that the parties had further discussion on the matter on

May 9 and May 16. It appears no resolution was reached. About three months

later, the motions to reopen and for sanctions were filed.

Debtors' original motion for sanctions requested: (1) an Order finding

UW-Stout in contempt and in willful violation of the discharge injunction; (2)

actual damages; (3) costs and attorneys' fees for bringing the motion; (4)

punitive damages;[20] and (5) other relief as the court deems equitable and

appropriate.[21] The motion did not specify the amount of damages.

---

[16] *In re Chambers*, 348 F.3d 650 (7th Cir. 2003).

[17] ECF No. 31, Exh. D.

[18] *Id.* Again, the amounts were redacted in the letter submitted to this Court.

[19] *Id.*

[20] Debtors allege punitive damages are warranted here because "UW-Stout is a sophisticated creditor, regularly engaged in collection of tuition and handling of student loans. Further, they have had the benefit of the advice of counsel but have persisted in their continued violations of the discharge injunction despite repeated warnings and demands." ECF No. 31, ¶ 22.

[21] In the motion, paragraph 21 states that "[a]s of the date of this motion, Movant's seized tax refund has not been repaid to Movant and Kelly J. Hazelton's degree has not been delivered." But in the relief requested in paragraphs A-E, the degree is not mentioned. ECF No. 31.

On remand, in their supplemental brief Debtors requested: (1) return of the seized tax refund; (2) attorneys' fees for bringing this action; and (3) any other sanctions the court finds appropriate.[22] Once again, the parties did not request an evidentiary hearing and agreed that all necessary facts were undisputed and in the record. Although the supplemental brief at least suggests a possible amount of damages in the form of return of the tax refund, the Debtors do not develop the argument.  Affording the Debtors the most expansive view of what they have presented, the Court will consider the request for damages a request for return of the actual amount of the tax refund that was seized. Any damage other than that amount is an "underdeveloped and waived" argument. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.").

## LEGAL STANDARDS

A bankruptcy court's order for a discharge places a permanent statutory injunction that prohibits parties from acting to collect a discharged debt. Section 524(a) provides that a discharge:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability

---

[22] ECF No. 62, p. 4.

of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a). "An action to determine whether a particular debt is excepted from a debtor's discharge . . . may be instituted either by the debtor or by any creditor." 4 *Collier on Bankruptcy* ¶ 523.04 (16th ed. Rev. 2020). Debts that fall under 11 U.S.C. § 523 are excepted from discharge. "The legislative history of section 523(a)(8) indicates that the statute was meant to be self-executing . . . ." *United States v. Wood*, 925 F.2d 1580, 1583 (7th Cir. 1991); *see also Rouse v. United States Dep't of Educ. (In re Rouse)*, 2002 WL 32001238, at *5 (Bankr. C.D. Ill. July 18, 2002).

"When a party violates a bankruptcy court's order by pursuing a discharged debt, the debtor can ask that the court hold that party in contempt." *In re Sterling*, 933 F.3d 828, 832 (7th Cir. 2019). A bankruptcy court's power to determine civil contempt is explicitly conferred by Fed. R. Bankr. P. 9020(b) and supported through the court's power under section 105. *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916-17 (7th Cir. 2001). This power is not only statutory but is also inherent. *See Backus Elec., Inc. v. Hubbartt (In re Hubbartt)*, No. 16-21251, Adv. No. 1-02152, 2020 WL 1845041, at *5 (Bankr. E.D. Wis. Apr. 10, 2020). This allows bankruptcy courts to "enforce [its] orders and ensure judicial proceedings are conducted in an orderly manner." *In re Kimball Hill, Inc.*, 595 B.R. 84, 100 (Bankr. N.D. Ill. 2019) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999)).

The offending party will be held in contempt only for a "willful" violation. *Sterling*, 933 F.3d at 832. A willful violation requires that an actual violation occurred, and the offending party had "actual knowledge" of the discharge. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004); *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2006). The moving party has the burden of proving contempt by clear and convincing evidence. *Sterling*, 933 F.3d at 832; *see also In re DiBattista*, 615 B.R. 31, 39 (S.D.N.Y. 2020). If found in contempt, the moving party may have a right to actual damages, attorneys' fees, and in some cases, punitive damages. *In re Hubbartt*, 2020 WL 1845041, at *5.

In *Taggart*, the Supreme Court of the United States held that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct," or in other words, when a creditor violates a discharge injunction, they can only be held in contempt if "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) (emphasis in original). Generally, the standard is objective and the "'absence of wilfulness does not relieve from civil contempt.'" *Id.* at 1802 (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). On the other hand, subjective intent is not always irrelevant. *Id.*

## DISCUSSION

For a court to find a party in contempt and impose sanctions, Debtors must first show, by clear and convincing evidence, that an attempt was made to collect a discharged debt in violation of the discharge injunction. The

8

discharge injunction does not apply to debts that were not discharged. The District Court held that the tuition debt was not a loan under section 523(a)(8). For that reason, it was not excluded from the discharge. *Hazelton v. UW-Stout*, No. 18cv159, 2019 WL 413567, at *3 (W.D. Wis. Feb. 1, 2019). As a result, the discharge injunction was violated.

On remand the question is whether there was an objectively reasonable basis for concluding that the creditor's conduct might be lawful under the injunction. If it is determined that there was no fair ground of doubt that the order barred the creditor's conduct, the appropriate sanctions must also be determined.

## A. Debtors Contend No Fair Ground of Doubt Exists

Debtors argue that no fair ground of doubt exists and UW-Stout's conduct violated the discharge order and no objectively reasonable basis to conclude otherwise exists. They contend, since the District Court's ruling, "there can be no fair room for doubt that the tax refund's seizure was a violation of the discharge injunction."[23] Debtors conclude since UW-Stout still has not returned the tax refund, sanctions are appropriate.

Debtors assert the Payment Agreement UW-Stout materially relies on "does not agree to pay the debt for a summer session at a later time."[24] They suggest there are errors in UW-Stout's arguments. They point to phone calls

---

[23] ECF No. 60, at 2.

[24] *Id.* at 1-2.

with unspecified content and to a letter dated April 25, 2017, where Debtors'
attorney asserted the debt was not a student loan based on his view of the
*Chambers* decision.[25] UW-Stout and Debtors were all aware of the case law and
Plan Agreement. In applying the law to the facts, the parties did not reach the
same conclusion. This difference in opinion appears to be the "errors" Debtors
suggest exist.[26]

In other words, Debtors contend that since UW-Stout knew about
*Chambers*, the language in the Payment Agreement, and Debtors'
interpretation of both. Thus, they say UW-Stout should have known their
position was objectively unreasonable even before the bankruptcy case was
reopened. From this, Debtors conclude UW-Stout must have known that their
position on the matter was objectively unreasonable. Debtors point to the fact
that the view they expressed to UW-Stout before reopening the case was the
same view the District Court took as evidence that UW-Stout was objectively
unreasonable. What this argument appears to boil down to is: objective
unreasonableness is evidenced by the Debtors' win in District Court. Taken
together, Debtors contend no fair ground of doubt exists that UW-Stout's
conduct was barred by the discharge injunction.

---

[25] ECF No. 31, Exh. D.

[26] *Id.* at 2

B. UW-Stout Contends the Debt Was Not Discharged and There is a Fair Ground of Doubt That Their Conduct Was Not Barred by the Injunction

UW-Stout maintains the debt falls within the student loan exception to discharge under section 523(a)(8).[27] But on remand their response is limited to addressing the sanctions issue. UW-Stout relied on the following sources in concluding that the tuition debt had not been discharged:

1. Debtors' own bankruptcy filings calling the debt a student loan;

2. The plain language of the Bankruptcy Code;

3. The plain language of the Payment Agreement; and

4. The enactment of BACPA after the *Chambers* ruling.[28]

UW-Stout contends that the above listed sources illustrate that there was fair ground of doubt that their conduct might be lawful. UW-Stout argues its position is not *de facto* unreasonable because of their loss in District Court. It also argues that:

> [W]hile the Debtors accurately state the rule in *Taggart*, they fail to apply it beyond stating in conclusory fashion that the Board's position was objectively unreasonable. Nor do the Debtors cite to any legal authority to support their arguments. For these reasons, the Debtors' arguments in favor of sanctions are underdeveloped and waived.[29]

---

[27] They preserved the issue for appeal. ECF No. 61, p. 7 n.2.

[28] On appeal UW-Stout also argued the Payment Agreement was an extension of credit and therefore met the requirements of a "loan" under *Chambers*.

[29] ECF No. 61, p. 10.

C. Bankruptcy Court's and District Court's Findings

In determining whether the debt fell under the exception to discharge in section 523(a)(8), this Court looked at the definition of "loan" under Internal Revenue Code § 221(d)(1). This Court found that a loan does not "require an actual exchange of funds between lender and borrower." At least two decisions supported this conclusion.[30] This Court also observed that the Payment Agreement contained credit term language such as "[c]redit will not be extended under this agreement unless the Marital Property Act section is completed for all married students" and "A FINANCE CHARGE will be assessed at a monthly periodic rate of 1.5% . . . ." Applying those facts this Court determined that the plain reading of the Payment Agreement makes clear the parties intended the transaction to be a loan. This Court concluded the debt had not been discharged.

The District Court disagreed. In determining whether the debt had been discharged, the District Court relied on *Chambers* in its analysis. The court held that the debt was not a "loan" and therefore the debt did not qualify under the section 523(a)(8) exception to discharge.

The court in *Chambers* held that "nonpayment of tuition qualifies as a loan under § 523(a)(8) in two classes of cases: where funds have changed hands, or where there is an agreement whereby the college extends credit . . . .

---

[30] *See Gakinya v. Columbia College (In re Gakinya)*, 364 B.R. 366 (Bankr. W.D. Mo. 2007); *Johnson v. Missouri Baptist College (In re Johnson)*, 218 B.R. 449 (B.A.P. 8th Cir. 1998). *Chambers* also recognizes that an actual exchange of funds is not *required* to meet the definition of a loan. *In re Chambers*, 348 F.3d 650.

This existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt." *Hazelton v. UW-Stout*, 2019 WL 413567, at *2 (quoting *In re Chambers*, 348 F.3d 650, 657 (7th Cir. 2003)) (internal citations omitted). "The *Chambers* court concluded that the student's debt in that case did not satisfy this definition . . . . Rather, the student 'incurred a debt on an open student account, attended classes in spite of the debt and failed to pay her bill.'" *Id.* (quoting *In re Chambers*, 348 F.3d at 657). The District Court found the Hazelton facts indistinguishable from *Chambers*. No funds exchanged hands and the District Court did not find the Payment Agreement to be an extension of credit "at least to the summer tuition." In other words, no money exchanged hands nor was there a prior contemporaneous agreement, so the debt was not a loan under section 523(a)(8).

On appeal, the Seventh Circuit found it did not have jurisdiction yet because "the district judge's order resolving the issue of dischargeability doesn't finally resolve the sanctions dispute." *Hazelton v. Bd. of Regents*, 952 F.3d at 918.

### D. Fair Ground of Doubt Existed Before the District Court's Ruling

     i.  *The parties' conduct before the seizure of the tax refund indicated that they thought the unpaid tuition was not discharged.*

Debtor eventually completed her degree in 2015 but did not pay her tuition bill. Her degree was withheld because of the unpaid tuition. Debtors' own schedules reflect UW-Stout's debt as a student loan. Debtors took no

action during the bankruptcy to declare the loan dischargeable. Debtors took

no action to have UW-Stout release the degree. Debtors did not try to assert

UW-Stout violated the discharge injunction until the tax refund seizure despite

UW-Stout continuing to withhold Debtor's degree. Debtors went nearly five

months without raising the issue of UW-Stout's alleged violation.

ii.    *UW-Stout's refusal to return the seized funds when Debtors told
them to does not show objective unreasonableness.*

Debtors' argument that UW-Stout's awareness of *Chambers* and the

Payment Agreement evidences UW-Stout's knowledge of their objective

unreasonableness is not compelling. UW-Stout articulated plausible, legally

grounded reasons why the circumstances were different than *Chambers.*

Although they ultimately lost the issue on appeal, in general, losing on an issue

in court does not render the losing party's position "objectively unreasonable."

*See Maxwood Music Ltd. v. Malakian,* 722 F. Supp. 2d 437, 439 (S.D.N.Y.

2010); *see also Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1988

(2016) ("Courts every day see reasonable defenses that ultimately fail (just as

they see reasonable claims that come to nothing.)"). The very things Debtors

identify to show "objective unreasonableness"[31] are what UW-Stout argues

support its position. Both parties rely on the same evidence to support their

---

[31] The Payment Agreement, the holding in *Chambers,* and UW-Stout's knowledge of
both.

position. What Debtors suggest is evidence of "objective unreasonableness" appears to be a matter of reasonable minds coming to different conclusions.

On appeal, UW-Stout also argued that the Payment Agreement was an extension of credit and met the *Chambers* definition of a loan. That conclusion was the subject of the appeals. It would therefore be difficult to conclude UW-Stout's belief that the debt had not been discharged in this case was objectively unreasonable.

E. FAIR GROUND OF DOUBT EXISTED AFTER THE DISTRICT COURT'S RULING

Debtors argue that any fair ground of doubt that may have existed disappeared upon the District Court's ruling. Debtors contend UW-Stout should have returned the tax refund or obtained a stay pending appeal. This argument is not compelling and ignores the way the court system functions.

The District Court, although ruling that the discharge injunction was violated, did not order UW-Stout to return the seized tax refund to Debtors. The matter was remanded to this Court to determine what, *if any*, sanctions are appropriate. UW-Stout, in briefing the argument on remand, reserved their right to appeal the dischargeability issue. So even though the District Court ruled the discharge injunction had been violated, UW-Stout is not "on notice" since the matter is still working its way through the courts. The appeal to the Seventh Circuit was dismissed for lack of jurisdiction because the District Court "resolved a discrete *issue*; it did not resolve the sanctions *dispute.*" For that reason, the District Court's order was not an appealable final decision. This leaves the "parties rights and obligations" unsettled.

15

Section 524 includes no private right of action to pursue violations of the discharge injunction. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir. 2001). *See also Kovacs v. United States*, 614 F.3d 666 (7th Cir. 2010) (discussing debtor's remedy options when alleged violating creditor was the IRS). Section 524 explains the effect of discharge but does not include a remedy for violations. Other sections of the Code contain specific remedy provisions, like section 362 which provides for a remedy of automatic stay violations. Therefore, damages from the violation of a discharge injunction are only recoverable if civil contempt standards are met. This includes the sanctions analysis under *Taggart*. There is no exception in the Code to the requirements of *Taggart*.

Under *Taggart*, imposition of sanctions requires more than a willful violation. This means that recovery of damages is not automatic upon a finding that the discharge injunction has been willfully violated. As a result, Debtors are not entitled to a return of their tax refund solely based upon a finding that the discharge injunction was violated.

*In re Shuey* illustrates this point. *See In re Shuey*, 606 B.R. 760 (Bankr. N.D. Ill. 2019). On remand from the district court, the bankruptcy court was tasked with determining the debtor's motion to reopen and impose sanctions. Creditor successfully caught money in the garnishment of debtor's wages for a period of time. The bankruptcy court considered *Taggart* in evaluating the debtor's request for sanctions:

16

The Supreme Court has recently written that a court should only, "impose civil contempt where there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, __ U.S. __, 139 S. Ct. 1795, 1801, 204 L. Ed. 2d 129 (2019). This stems from the tradition of cases outside the bankruptcy context, wherein the Supreme Court has stated that civil contempt should not be the remedy "where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S. Ct. 618, 28 L. Ed. 1106 (1885). In *Longshoremen v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 76, 88 S. Ct. 201, 19 L. Ed. 2d 236 (1967), for instance, the Supreme Court explained that civil contempt is not appropriate unless, "those who must obey" an order "will know what the court intends to require and what it means to forbid."

*Id.* at 770.

The bankruptcy court concluded the creditor had an "objectively reasonable basis for believing that his conduct did not violate the discharge injunction." *Id.* at 771. The creditor was stayed as to future actions. Still, the court declined to "impose any sanctions upon him for past events." *Id.* In declining to impose sanctions, the money caught by the garnishment was not returned to the debtor.  In other words, after *Taggart* a finding that the discharge injunction was violated does not *ipso facto* lead to an award of sanctions.

While this Court acknowledges, under the guidance in the District Court Opinion and Order, that there was error in our initial analysis of the relationship between the parties, several thoughtful arguments have been made by UW-Stout as to the reasons it should be able to collect from Debtors. This Court concludes that UW-Stout had an objectively reasonable basis for

believing their conduct did not violate the discharge injunction. Thus, under *Taggart*, sanctions are not appropriate. The request is denied.

    F. <u>ATTORNEYS' FEES ARE NOT APPROPRIATE</u>

Debtors request an award of attorneys' fees and costs. The Court will address that request in the interest of completeness. Even if sanctions were appropriate here, awarding attorneys' fees still would not be.

The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-253 (2010)). "However, a court may assess attorneys' fees for the willful disobedience of a court order or if the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Atkins v. United States (In re Atkins)*, 279 B.R. 639, 651 (Bankr. N.D.N.Y. 2002). Courts agree that as part of a finding of contempt for willful violations of the discharge injunction, reasonable attorney's fees and costs may be awarded. *Zale*, 239 F.3d at 916. Awarding costs and fees is not mandatory and such an award is at the court's discretion. *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005).

Our legal system is designed to afford a process where disagreement is litigated, possibly appealed, and determined. As shown by this case, parties may win in one court and lose in another. That is the reason that, absent

18

willful disobedience, bad faith, or some other improper reasons, attorneys' fees
are not awarded. There was a reasonable basis for disagreement. There is no
evidence of bad faith by UW-Stout. No attorneys' fees are appropriate here and
the request for fees is denied.

G. Punitive Damages

Similarly, even if sanctions were appropriate under the circumstances,
punitive damages cannot be awarded. Debtors did not develop any argument
for punitive damages. Additionally, "[a]lthough punitive damages have been
awarded at times for discharge injunction violations, such damages generally
are only appropriate when a creditor engages in 'egregious or vindictive
conduct,' more akin to 'conduct beyond willfulness or deliberation and more
closely resembling a specific intent to violate the discharge injunction.'" *In re
Gecy*, 510 B.R. 510, 525 (Bankr. S.D.S.C. 2014) (quoting *Cherry v. Arendall (In
re Cherry)*, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000)). Such conduct does not
appear here. Even if it did, the creditor is an arm of the State.

Sovereign immunity is afforded to "arms of the State" which include State
institutions of higher learning. *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356,
360 (2006). That immunity can be abrogated by specific acts of Congress. *Id.* at
359. 11 U.S.C. § 106 abrogates sovereign immunity.[32]

11 U.S.C. § 106 (a), in part states:

---

[32] Reliance on this section may not be necessary because, in *Tenn. Student Assistance
Corp. v. Hood*, 541 U.S. 440, 448 (2004), the *Supreme* Court held that States are
generally "bound by a bankruptcy court's discharge order no less than other
creditors."

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> > (1) Sections 105, 106, . . . 523 . . . of this title . . . .
> >
> > (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages**. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(emphasis added).

Under section 106, States are bound to a bankruptcy court's discharge injunction and "[i]njunctive relief, damages, and attorneys' fees are ancillary to the proceeding because those remedies serve as mechanisms for enforcement of the discharge." *In re Muhammad*, 586 B.R. 753, 760 (Bankr. W.D. Wis. 2018) (citing *Slayton v. White (In re Slayton)*, 409 B.R. 897, 903 (Bankr. N.D. Ill. 2009)). But punitive damages are not allowed under the Code. As a result, to the extent that Debtors seek punitive damages, the request must also be denied.

## CONCLUSION

For these reasons, to the extent that the Debtors' motion seeks to impose sanctions or hold UW-Stout in civil contempt for prior violations of the discharge injunction, the motion is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: September 25, 2020.

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge